NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2887
_____

M. Z., A MINOR BY HIS PARENT AND
NATURAL GUARDIAN, D.Z; D.Z,

v.

BETHLEHEM AREA SCHOOL DISTRICT,
Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 5-11-cv-02313)
District Judge:  Honorable Juan R. Sánchez
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 8, 2013

Before:  RENDELL, FISHER and JORDAN, *Circuit Judges*.

(Filed: March 27, 2013 )
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Bethlehem Area School District appeals from the District Court's order that the

School District fund an independent educational evaluation under the Individuals with

Disabilities Education Act (IDEA), 20 U.S.C. § 1400, et seq. For the reasons stated below, we will affirm.

## I.

We write principally for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

M.Z., a 17-year-old student in the School District, has been diagnosed with disabilities and found eligible for special education services, including speech and occupational therapy. He also receives gifted services and has earned high grades. Mid-way through M.Z.'s eighth grade year, the School District reevaluated him for the purpose of updating his Individualized Education Plan (IEP) as prescribed by the IDEA, 20 U.S.C. § 1414(a)(2); 34 C.F.R. § 300.303, and determined that M.Z. no longer required disability services in order to receive a free and appropriate public education.

M.Z.'s parent objected, arguing that the reevaluation did not utilize the methods necessary to properly assess M.Z.'s needs. This objection gave the School District two options under the IDEA: fund an independent evaluation or request a due process hearing in order to defend the appropriateness of its evaluation. *See* 34 C.F.R. § 300.502. The School District chose to proceed with a hearing, which took place in August and September 2010.

The Hearing Officer ordered the School District to update the reevaluation report to include classroom observations and input from M.Z.'s teachers and parent in order to determine how the transition from middle to high school had impacted M.Z. The Hearing Officer also decided that an independent evaluation at public expense was not required. Both parties sought judgment on the administrative record from the District Court, which concluded that the Hearing Officer had committed legal error when she declined to order a publicly-funded independent educational evaluation despite her conclusion that the School District's report was inappropriate. *See id*. This appeal followed.

## II.

The District Court had jurisdiction to review the decision of the Hearing Officer under 20 U.S.C. § 1415(i)(2). We have jurisdiction over this appeal under 28 U.S.C. § 1291. "When considering an appeal from a state administrative decision under the IDEA, district courts apply a nontraditional standard of review, sometimes referred to as modified de novo review," giving "due weight and deference to the findings in the administrative proceedings." *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 564 (3d Cir. 2010) (internal citations omitted) (internal quotation marks omitted). "Factual findings from the administrative proceedings are to be considered prima facie correct, and if the reviewing court does not adhere to those findings, it is obliged to explain why." *Id.* (citations and quotation marks omitted). "We review a district court's findings of fact for

3

clear error, but we exercise plenary review over the legal standards that a district court applies and over its legal conclusions." *Id.*

III.

School districts must reevaluate students with disabilities who are eligible for services under the IDEA at least once every three years, unless the parent and local education agency both conclude that reevaluation is unnecessary. 20 U.S.C. § 1414(a)(2)(B)(ii); 34 C.F.R. § 300.303. If a parent disagrees with the reevaluation report, the school district must fund an independent educational evaluation unless it files a due process claim and successfully demonstrates that its evaluation was "appropriate." 34 C.F.R. § 300.502. Here, the parties disagreed about whether the Hearing Officer had actually concluded that M.Z.'s evaluation was appropriate. The District Court held that the Hearing Officer had correctly found the evaluation inappropriate and that, as a result, the Hearing Officer should have ordered a publicly-funded independent educational evaluation.

A.

We consider first whether the District Court committed clear error in finding that the Hearing Officer had correctly determined that the School District's reevaluation of M.Z. was inappropriate under the IDEA. Whether the evaluation was appropriate is a question of fact. *D.S.*, 602 F.3d at 564.

4

First, the School District argues that a finding in M.Z.'s favor would constitute an overturning of the Hearing Officer's factual conclusions because the Hearing Officer had found the report to be appropriate. As the District Court explained, the Hearing Officer's discussion, including the statement that the "evaluation cannot be used as an appropriate basis for determining whether [M.Z.] is currently IDEA eligible," clearly indicates a finding of inappropriateness.

Alternatively, the School District argues that, if the Hearing Officer did in fact find the reevaluation inappropriate, that finding was incorrect and should not have been affirmed by the District Court, even under the highly deferential standard of review it was obligated to apply. The School District contends that M.Z.'s evaluation was appropriate because it complied with applicable state and federal laws. The evaluation, according to the School District, was completed within the required time period and was based on the necessary variety of diagnostic tools. *See* 20 U.S.C. § 1414(a)(2); 34 C.F.R. §§ 300.303, 300.304, 300.305.

The record makes clear that the evaluation's chosen tools and strategies were not "sufficiently comprehensive" and did not satisfy the requirement to "provide relevant information that directly assists persons in determining the educational needs of the child are provided." 34 C.F.R. § 300.304. The Hearing Officer found that the most important factor in determining M.Z.'s progress in acquiring pragmatic language skills was how well he was able to apply those skills in peer settings on a daily basis. The Hearing

5

Officer also found that the data collected on this factor was "anecdotal" and "not specifically directed toward reporting on Student's IEP goals" – evidence that the methods used were inadequate to properly assess M.Z.'s progress. Furthermore, as the Hearing Officer determined, the assessment tools used did not provide relevant information needed to make a prospective determination of future eligibility for services in light of M.Z.'s transition to a new setting, given that M.Z.'s ability to apply pragmatic language skills had been shown to vary based on differences in the classroom environment.[1] The District Court did not, therefore, commit clear error in affirming the Hearing Officer's finding that the reevaluation was not appropriate.

B.

Once the Hearing Officer determined that the reevaluation was inappropriate, M.Z. was entitled to an independent educational evaluation at public expense as a matter of law. *See* 34 C.F.R. § 300.502. The Hearing Officer attempted to fashion other relief, opining that the inappropriateness of the report could be rectified by supplemental

---

[1] The School District argues that it could not possibly have provided this kind of assessment at the time of its evaluation because the relevant transition had not yet occurred, and it could not wait until fall 2010 to employ additional tools because the School District was "legally mandated to issue a new [reevaluation report] in March 2010." Although federal regulations apply the 60-day timeline only to initial evaluations, Pennsylvania regulations extend this deadline to reevaluations. *See* 22 Pa. Code § 14.124. As we will explain, the Hearing Officer lacked the authority to require amendments to the evaluation to be conducted during the following school year. Nonetheless, we conclude that the School District failed to employ assessment strategies *during the mandated time period* that would have provided needed relevant information about M.Z.'s educational needs.

information.  Because § 300.502 provides mandatory relief, the District Court properly reversed the Hearing Officer and ordered a publicly financed independent evaluation.[2]

C.

The School District argues that the District Court abused its discretion when it declined to admit additional evidence in the form of an updated report created in accordance with the Hearing Officer's determination.  A district court may, at its discretion, exclude new evidence that is not "relevant, non-cumulative and useful." *Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 760 (3d Cir. 1995).  As discussed in Part III.B, the Hearing Officer had no authority to order additional information gathering as a remedy.  *See* 34 C.F.R. § 300.502.  The District Court did not, therefore, abuse its discretion in concluding that reports created in response to that order were irrelevant to the question of whether the Hearing Officer should have, upon finding the reevaluation inappropriate, ordered an independent educational evaluation at public expense.

IV.

For the foregoing reasons, we will affirm the order of the District Court.

---

[2] The School District also contends, without citation to authority, that the District Court's order worked "manifest injustice" because M.Z. was academically successful during his ninth grade year.  This argument is illogical, given that his success may be in part attributed to the services he received, and legally insignificant.  The IDEA requires services to be "reasonably calculated" to help students obtain "meaningful educational benefits" in light of their "intellectual potential" – even when that potential is great.  *See Shore Reg'l High Sch. Bd. of Educ. v. P.S.*, 381 F.3d 194, 198 (3d Cir. 2004).